IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

*FILED-CLERK*
*U.S. DISTRICT COURT*
*05 MAY -6 PM 2:40*
*TX EASTERN-MARSHALL*
*BY_____*

| | | |
|---|---|---|
| GOLDEN BRIDGE TECHNOLOGY, INC. | § § § § | |
| Plaintiff, | § § | |
| vs. | § § | Civil Action No. 2:05cv170 |
| NOKIA, INC., MOTOROLA, INC.; T-MOBILE USA, INC.; ERICSSON, INC.; PANASONIC MOBILE COMMUNICATIONS DEVELOPMENT CORPORATION OF U.S.A.; PANASONIC MOBILE COMMUNICATIONS CO. LTD.; NTT DOCOMO USA, Inc.; NTT DOCOMO, INC.; QUALCOMM INCORPORATED, LUCENT TECHNOLOGIES, INC; TELECOM ITALIA | § § § § § § § § § § § § § | Jury Trial Demanded *LED* |
| Defendants. | § | |

## COMPLAINT

Plaintiff Golden Bridge Technology, Inc. ("GBT") by way of Complaint against

Defendants Nokia, Inc. ("Nokia"), Motorola, Inc. ("Motorola"), T-Mobile USA, Inc. ("T-

Mobile"), Ericsson, Inc. ("Ericsson"), Panasonic Mobile Communications Development

Corporation Of U.S.A. ("Panasonic U.S.A."); Panasonic Mobile Communications Co. Ltd.

("Panasonic"), NTT DoCoMo USA, Inc. ("NTT USA"); NTT DoCoMo, Inc. ("NTT");

Qualcomm Incorporated ("Qualcomm"), Lucent Technologies, Inc. ("Lucent") and Telecom

Italia ("Telecom") (collectively, "Defendants"), alleges:

## NATURE OF THE CLAIM

1.     This is an action by GBT against Defendants for conspiring with each other to unlawfully deprive GBT of the value of certain patented technology to be used in the next generation of cellular telephones and mobile communications.

2.     As is set forth below, GBT's technology was an optional standard to be used in the next generation of cellular communications technologies, intended to ensure the compatibility of cellular phone equipment throughout the world. As such, GBT's technology was extremely valuable, since it could, and probably would have been, adopted and implemented by most manufacturers of cellular communications equipment and most operators of cellular communications networks.

3.     After GBT sought to enter into reasonable license agreements with various cellular telephone manufacturers and providers, including Defendants, Defendants conspired among themselves to remove GBT technology from the new standards for no legitimate reason and for the purpose of punishing GBT and depriving it of the ability to exploit its valuable technology. Defendants' actions have rendered GBT's technology virtually valueless.

4.     GBT seeks compensatory damages and punitive damages in an amount commensurate with the intentionally tortious and unlawful nature of Defendants' actions.

## THE PARTIES

5.     GBT is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 198 Brighton Avenue, Long Branch, New Jersey 07740.

2

6.     Nokia is a Delaware corporation with its principal place of business at 6000 Connection Dr., Irving, Texas 75309. Nokia may be served with process by serving its registered agent, National Registered Agents, Inc., 1614 Sidney Baker Street, Kerrville, Texas 78028.

7.     Motorola is a Delaware corporation with its principal place of business at 1303 East Algonquin Road, Schaumburg, Illinois 60196. Motorola may be served with process by serving its registered agent, CT Corporate System, 350 North St. Paul Street, Dallas, Texas 75201.

8.     T-Mobile is a Delaware corporation with its principal place of business at 12920 SE 38th Street, Bellvue, Washington 98006. T-Mobile may be served with process by serving its registered agent, Corporation Service Company, 701 Brazos Street, Suite 1050, Austin, Texas 78701.

9.     Ericsson is a Delaware corporation with its principal place of business at 6300 Legacy Drive, Plano, Texas 75024.   Ericsson may be served with process by serving its registered agent, Capitol Corporate Services, Inc., 800 Brazos, Suite 1100, Austin, Texas 78701.

10.     Panasonic is, upon information and belief, a corporation organized and existing under the laws of Japan with its principal place of business at 600, Saedo-cho, Tsuzuki-ku, Yokohama, 224-8539, Japan. Panasonic may be served with process under the Hague Convention through the Central Authority of Japan, Ministry of Foreign Affairs, 2-2-1 Kasumigaseki, Chiyoda Ku, Tokyo 100-8919, Japan.

11.     Panasonic USA is a Delaware corporation with its principal place of business at 1225 Northbrook Parkway, Suwanee, Georgia 30024. Panasonic USA may be served with

process by serving its registered agent, The Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware 19801.

12. NTT is, upon information and belief, a corporation organized and existing under the laws of Japan with its principal place of business at 11-1, Nagata-cho 2-chome, Chiyoda-ku, Tokyo 1006150, Japan. NTT DoCoMo may be served with process under the Hague Convention through the Central Authority of Japan, Ministry of Foreign Affairs, 2-2-1 Kasumigaseki, Chiyoda Ku, Tokyo 100-8919, Japan.

13. NTT USA is a Delaware corporation with its principal place of business at 461 Fifth Avenue, 24th Floor, New York, New York 10017. NTT DoCoMo USA may be served with process by serving its registered agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

14. Qualcomm is a Delaware corporation with its principal place of business at 5775 Morehouse Drive, San Diego, California 92121-1714. Qualcomm may be served with process by serving its registered agent, Prentice Hall Corporate System, 701 Brazos Street, Suite 1050, Austin, Texas 78701.

15. Lucent is a Delaware corporation with its principal place of business at 600 Mountain Avenue, Murray Hill, New Jersey 07974. Lucent may be served with process by serving its registered agent, The Prentice-Hall Corporation System, Inc., 2711 Centerville Road Suite 400, Wilmington, Delaware, 19808.

16. Telecom is, upon information and belief, a corporation organized and existing under the laws of Italy, with its principal place of business at Piazza degli Affari, 2, 20123 Milano, Italy. Telecom Italia may be served with process under the Hague Convention through

4

the Central Authority of Italy L'Ufficio Unico Degli Ufficiali Giudiziari, Presso la Corte
D"Appello di Roma, Via Carlo Poma, 5, 00195 Rome, Italy.

17. All of the Defendants are doing business in the Eastern District of Texas and
elsewhere.

## JURISDICTION AND VENUE

18. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1337, in
that Plaintiff's claims arise under the antitrust laws of the United States. This Court has
jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. § 1367 because
they arise out of the same facts and circumstances as Plaintiff's federal claims.

19. Venue is proper in this Court under 28 U.S.C. § 1391(b) and (c).

## FACTUAL BACKGROUND

20. Since its founding in March of 1995, GBT has developed technology for
Wideband Code-Division Multiple Access ("WCDMA") wireless communications systems.

21. GBT and Defendants, at all relevant times hereto, have been members of North
American and international standards organizations that have developed standardized technical
specifications for WCDMA systems. GBT led the effort to create a technical specification for a
packet-oriented third generation ("3G") WCDMA system as co-chair of the Telecommunications
Industry Association ("TIA") TR46.1 committee, beginning in late 1997.

22. Between August 1998 and December 1998, GBT made numerous contributions of
technology to the TIA TR46.1 committee. In December 1998, the Third Generation Partnership
Project ("3GPP") was formed by various regional standards organizations for the purpose of
creating uniform worldwide standards for WCDMA systems and equipment. Worldwide efforts

to develop standards for WCDMA systems were moved and merged into 3GPP. The 3GPP standards are intended to allow cellular phones which are compatible with these standards to be usable throughout the world, including within the United States.

23.    GBT became a member of 3GPP and continued its contributions to that organization. Many of GBT's contributions were ultimately adopted as part of the standard for the 3G Universal Mobile Telecommunications System ("UMTS"), which uses WCDMA technology.

24.    On March 22, 1999, GBT filed two applications for United States patents covering certain of their contributions to the 3GPP technical specifications. U.S. Patent No. 6,574,267 ("the '267 patent"), U.S. Patent No. 6,169, 759 ("the '759 patent"), and U.S. Patent No. 6,301,286 ("the '286 patent") resulted from these two applications. (Copies of the foregoing patents are annexed hereto as Exhibits A, B and C).

24.    The '267 patent covers systems, methods and equipment for initiating communications between base station radio transceivers and remote mobile transceivers (cellular handsets, for example) in WCDMA systems. The '759 and '287 patents cover systems, methods and equipment for communication of data and control information over a common packet channel ("CPCH") between base station radio transceivers and remote mobile transceivers in WCDMA systems.

25.    In summary, GBT's patents improve the ability of WCDMA networks to communicate medium-sized packets of data efficiently.

26. The 3GPP adopted the technology covered by the '267 patent as an essential part of the 3GPP technical standards in 1999. The 3GPP adopted the CPCH technology covered by the '759 and '287 patents as an optional part of the 3GPP technical standards in 1999.

27. As an optional feature of the 3GPP technical standards, equipment manufacturers and network operators are free to either adopt or not adopt CPCH in their systems, since it includes features that not all customers using 3GPP-compatible telephones would desire. If, however, an equipment manufacturer or network operator wished to include the features encompassed by CPCH, it would be obligated to conform to the CPCH standard.

28. GBT is the only company that owns patents covering the CPCH standard.

29. After the issuance of the patents covering CPCH and other GBT-developed technology, GBT pursued licenses with a number of WCDMA equipment manufacturers, including Defendants Ericsson, Nokia, Motorola, Panasonic, NTT, Qualcomm and Lucent, as well as non-parties Nortel Networks ("Nortel"), and Texas Instruments Incorporated ("TI"). GBT's offers to license Defendants and others involved a bundle of patents covering a broad range of GBT's WCDMA technology, of which CPCH is an integral part.

30. All of the foregoing companies compete with one another in the market for cellular communications products, including WCDMA equipment, and are competitors with each other and with GBT with respect to technology to be used in cellular communications products.

31. On March 9-11, 2005, a technical standards group of the 3GPP met in Tokyo, Japan in what was known as TSG-RAN meeting number 27. Among the companies represented were Ericsson, Nokia, Motorola, Panasonic, Qualcomm, Lucent and NTT, all of which have been approached by GBT to enter into a license, as well as T-Mobile and Telecom Italia.

32.    At the March 9-11, 2005 meeting it was agreed that CPCH would be deleted from the next release of the 3GPP standards. The minutes from the meeting indicate on page 12 that "many companies suggested that CPCH could be added to the list" of features deleted. (Minutes of the March 9-11 meeting are annexed hereto as Exhibit D). However, those same minutes indicate the decision to add CPCH to the list of features to be deleted was "the outcome of an offline session" rather than something that took place during an official session where discussions would be recorded in the minutes. Ex. D, p. 13.

33.    The participants at the March 9-11 Tokyo meeting, including Defendants, agreed that the removal of CPCH from the 3GPP standards would be put to a final vote at a meeting to be held on May 9-13, 2005 in Athens, Greece.

34.    Since the March 9-11 Tokyo meeting, Defendants have been diligently working to accomplish the complex and difficult task of removing CPCH from the 3GPP standards. (Copies correspondence among Defendants and of draft revisions to the 3GPP standards are annexed hereto as Exhibit E.)

35.    Upon information and belief, prior to the March 9-11 meeting, there had never been any discussion about deleting CPCH, which had been an optional feature of the previous releases of the 3GPP standard for over five years.

36.    The proposed deletion of CPCH was accomplished without any prior notice to GBT that such deletion was going to be considered. Upon information and belief, the various drafts of the agenda for the March 9-11 meeting never mentioned CPCH or its possible deletion.

37.    Upon information and belief, there was no technical discussion at the meeting about the deletion of CPCH, which was adopted as part of the 3GPP standards only after

8

numerous submissions of information by GBT and many months of technical discussions. Instead, the decision was made at what has been officially described as an "offline session."

38.     Upon information and belief, there is no replacement for the CPCH feature in the 3GPP standard, which was originally included as a technically superior solution to meet the requirement of a channel for transmitting medium-sized packets of data in WCDMA networks.

39.     Removal of CPCH will have a very significant overall impact on a number of technical standards.

40.     Deletion of CPCH from future releases of the technical standard effectively forecloses the ability of manufacturers of cellular communications equipment and operators of cellular communications networks to ever migrate to CPCH as a solution as WCDMA technology matures and the need for an efficient method of transmitting medium-sized data packets for applications such as pictures and video clips arises. Because of its optional nature, allowing CPCH to remain in the technical standards as a potential solution poses no risk or threat to the primary goal of the 3GPP, which is standardization.

41.     WCDMA wireless technology is in the early phases of implementation by network operators around the world. These operators are just now beginning to order equipment and install it in networks. As these networks proliferate and the range of service options expands, the operators of these networks will demand an efficient way to transmit the medium-sized data packets described above, and will look to the 3GPP technical standards for a solution when specifying base stations and handsets. By conspiring to remove CPCH from the standards, Defendants are seeking to ensure that the network operators will not be able to demand

equipment incorporating GBT's patented CPCH technology, thus destroying a significant portion of GBT's business.

42. Defendants acted in concert with each other by voting and/or agreeing to remove CPCH from the next release of the 3GPP technical standards, without notice, without technical justification, and without a replacement, for the purpose of injuring and interfering with GBT's business, in part because of GBT's efforts to obtain favorable licenses for its technology.

43. Defendants actions, in concert with others, have damaged GBT by removing, without any justification, a lucrative source of licensing revenue for GBT from the range of implementation options available to UMTS equipment manufacturers and network operators, thus significantly reducing the present value of GBT's patent portfolio.

44. GBT faces immediate and irreparable harm to its business if the next release of the 3GPP technical standards is allowed to issue without CPCH, justifying the entry of a temporary restraining order and preliminary injunction to preserve the status quo until such time as a trial on the merits can be had.

### COUNT ONE
### UNLAWFUL COMBINATION IN RESRAINT OF TRADE

45. GBT repeats the allegations contained in paragraphs 1 through 44 as if fully set forth herein.

46. At the March 9-11 3GPP meeting, Defendants combined and conspired to refuse to deal with GBT with respect to CPCH, and encouraged others to refuse to deal with GBT by eliminating CPCH as an optional standard for 3GPP technology, contrary to Section 1 of the Sherman Anti-Trust Act, 15 U.S.C. §1.

10

47.     The foregoing concerted refusal to deal is a *per se* unreasonable restraint of trade upon interstate commerce and commerce between the United States and foreign nations. Defendants combined and conspired with each other to exclude CPCH from the 3GPP standards solely to punish GBT for asserting the rights related to its patent portfolio and otherwise harm GBT.

48.     The foregoing concerted refusal to deal was intended by Defendants to remove a source of customers from GBT for its patents, including its patents covering CPCH and, thus, to eliminate GBT as a competitor as a source of technology related to cellular communications.

49.     Those customers include manufacturers of cellular communications equipment, as well as operators of cellular communications networks.

50.     The removal of CPCH from the 3GPP standards had an additional anti-competitive effect. The intent of the 3GPP standards is to create and encourage compatibility among cellular communications equipment made by different manufacturers, and, as a result to competition among manufacturers of 3GPP-compatible products. There was no valid technical, scientific or business reason to exclude CPCH from the 3GPP standards.

51.     Absent intervention of the Court, because the features covered by the CPCH technology will no longer be within the 3GPP standards, manufacturers of cellular communications products and operators of cellular communications networks are less able to provide compatibility for the features and products such as those offered by CPCH technology with other manufacturers' products.

52.     Because of the incompatibility of different manufacturers' products with respect to these features, competition in and consumer choice for those products will be reduced.

11

53. As a result of the foregoing, GBT has been damaged. In addition, GBT has suffered and will suffer irreparable harm if the combination and conspiracy is allowed to continue.

## COUNT II
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

54. GBT repeats the allegations contained in paragraphs 1 through 53 as if fully set forth herein.

55. Because GBT's CPCH technology was a part of the 3GPP standards, GBT had a reasonable expectation of economic advantage with respect to licensing its technology to manufacturers of goods incorporating those standards and operators of cellular communications networks incorporating those standards.

56. Defendants were aware of this reasonable expectation of economic advantage.

57. Defendants conspired among themselves to interfere with GBT's reasonable expectation that it would be able to exploit its CPCH technology.

58. Defendants' interference with GBT's reasonable expectation that it would be able to exploit its CPCH technology was intentional and malicious in that Defendants' actions were intended to harm GBT and were taken without justification or excuse.

59. But for Defendants interference, and combination and conspiracy with each other, GBT would have been able to license its CPCH technology to users of the 3GPP standards. Because GBT's CPCH technology will no longer be a part of the 3GPP standards, manufacturers of 3GPP-compatible products have little or no incentive to license GBT's CPCH technology.

12

60.     As a result of Defendants' interference, GBT has been damaged. In addition, Defendants' acts of interference further threaten to cause additional immediate, substantial and irreparable harm for which GBT seeks injunctive relief.

## COUNT III
## UNFAIR COMPETITION

61.     GBT repeats the allegations contained in paragraphs 1 through 60 as if fully set forth herein.

62.     Defendants are competitors of GBT with respect to the use and exploitation of technology compatible with and used in 3GPP-compatible products.

63.     Defendants' actions in combining and conspiring with each other to remove GBT's CBCH technology from the 3GPP standards constitute unfair competition.

64.     Defendants combined and conspired with each other solely for the purpose of inflicting harm upon GBT and to punish GBT for attempting to assert and enforce its rights in its patented CBCH technology.

65.     Defendants' actions were outside the types of competitive conduct which is allowed in the marketplace.

66.     As a result of Defendants' actions, GBT has been damaged. In addition, Defendants' acts of unfair competition further threaten to cause additional immediate, substantial and irreparable harm for which GBT seeks injunctive relief.

## DEMAND FOR JURY TRIAL

67.     GBT demands a jury trial on all claims and issues so triable.

## PRAYER FOR RELIEF

WHEREFORE GBT prays for entry of judgment against Defendants, jointly and severally, as follows:

A.    For threefold damages in accordance with 15 U.S.C. § 15;

B.    For a preliminary and/or permanent injunction prohibiting Defendants from further participation in the foregoing combination and conspiracy or from taking any acts in furtherance of the combination and conspiracy in accordance with 15 U.S.C. § 26;

C.    For all damages caused by Defendants' tortuous interference with prospective economic advantage and unfair competition, including exemplary damages for Defendants' willful and malicious conduct;

D.    For a preliminary and/or permanent injunction prohibiting Defendants and each of their officers, agents, employees, representatives, successors, assigns and those acting in privity or concert with it from further acts of tortuous interference with prospective economic advantage and unfair competition as set forth above;

E.    For pre-judgment and post-judgment interest on the damages caused by reason of Defendants' activity complained of herein;

F.    For reasonable attorneys' fees and costs of suit in accordance with 15 U.S.C. § 15 and under state law;

G.    For such other and further relief as the Court may deem proper under the circumstances.

Respectfully submitted,

Date: 5/6/05

T. John Ward, Jr.
State Bar No. 00794818
Law Office of T. John Ward, Jr., P.C.
P.O. Box 1231
Longview, Texas 75606-1231
(903) 757-6400 (telephone)
(903) 757-2323 (facsimile)
E-mail: jw@jwfirm.com

Otis W. Carroll
Texas Bar No. 03895700
IRELAND, CARROLL & KELLEY, P.C.
6101 South Broadway
P.O. Box 7879
Tyler, Texas 75711-7879
Telephone: (903) 561-1600
Facsimile: (903) 581-1071
Email: otiscarrol@icklaw.com

Franklin Jones, Jr.
Texas Bar No. 00000055
201 W. Houston Street
P.O. Box 1249
Marshall, Texas 75671-1249
Telephone: (903) 938-4395
Facsimile: (903) 938-3360
Email: maizieh@millerfirm.com

ATTORNEYS FOR PLAINTIFF

15